# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION (NO. II)<br><br>This document relates to:<br><br>*Dow Chemical Company v. BNSF Railway Company, et al.*, Case No. 1:19-cv-03516-BAH | MDL Docket No. 2925<br>Misc. No. 20-8 (BAH)<br><br>**Re-filed pursuant to No 1:20-mc-00008-BAH, ECF 102 (from No. 1:19-cv-03516-BAH, ECF 19)** |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS DOW'S AMENDED COMPLAINT

Defendants CSX Transportation, Inc. ("CSXT"), Norfolk Southern Railway Company ("NS"), BNSF Railway Company ("BNSF"), and Union Pacific Railroad Company ("UP" and together, "Defendants") respectfully submit this memorandum in support of their Motion to Dismiss the Amended Complaint ("Dow Am. Complaint") of The Dow Chemical Company ("Dow"), which the Defendants ask the Court to grant under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, Federal Rule of Civil Procedure 12(f).

## I.    INTRODUCTION

As this Court well knows, the conspiracy theory alleged by the putative class plaintiffs for

over a decade in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL 1869, (D.D.C.) (the

"MDL Actions") has been that:

- the four largest U.S. railroads—CSXT, NS, BNSF, and UP (the "MDL Defendants")—purportedly

- conspired to adopt and apply "uniform" fuel surcharges assessed as a percentage of the underlying freight rate (*i.e.*, "rate-based") and thereby impose a percentage rate increase to the price of rail freight "across-the-board"

- beginning in mid-2003, through 2008.

*See, e.g.*, Second Consolidated Amended Class Action Complaint ("Class Compl."), MDL 1869,

ECF 324 at ¶¶ 2, 5, 11, 14, 54, 78 (Feb. 3, 2010).[1]  And as the Court is also aware, there are now—

following denial of certification in the MDL Actions—absent former putative class members who

have brought new lawsuits seeking to collect damages based on payments of these fuel surcharges

by pressing claims of this same purported conspiracy.

This is not one of those lawsuits.  In what appears to be copied in large part from a

complaint filed weeks earlier by steel shippers ArcelorMittal USA LLC and ArcelorMittal

Dofasco, G.P. ("ArcelorMittal"), *see ArcelorMittal USA LLC. v. CSX Transp.*, *Inc.*, No. 1:19-cv-

03379-PLF (D.D.C.), ECF No. 1, Dow's Amended Complaint instead alleges a *new* conspiracy

and seeks to recoup damages based on the idea that:

---

[1]    For simplicity, Defendants generally cite to this, the operative complaint in the MDL Actions since 2009, in this memorandum.

- Canadian National Railway ("CN"), Canadian Pacific Railway ("CP") and Kansas City Southern Railway ("KCS")—three railroads to which Dow presumably paid fuel surcharges—conspired,

- over an entirely different type of fuel surcharge—mileage-based surcharges—as well as rate-based fuel surcharges,

- over a period of *sixteen years*, a period *three times longer* than the MDL class period and which purportedly continues, notwithstanding the twelve years of MDL litigation before this Court, to this day.[2]

This new conspiracy alleged by Dow differs from the putative class's claims at the most fundamental levels: who allegedly conspired, when they allegedly did so, and what they allegedly price-fixed.

Dow's motivation for these new claims is obvious enough: it seeks "damages" for a much broader set of fuel surcharge payments over a much longer timeframe, made to entirely different railroads. But these new claims come many years too late to be timely under the Clayton Act's four-year statute of limitations, 15 U.S.C. § 15, and should be dismissed. Defendants do not dispute that the limitations period for the individual claims of absent former putative class members was equitably tolled under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), while the class action was pending. But Dow has given up the benefit of *American Pipe* tolling by filing a very different case than the one asserted by the putative class.

---

[2]   Defendants CSXT and NS have moved to dismiss ArcelorMittal's complaint on February 6, 2020, a day prior to all MDL Defendants moving to dismiss, in substantively identical motions, this and three other substantively identical complaints brought by Dow's counsel on behalf of International Paper Company (No. 1:20-cv-00023-PLF), Gerdau Ameristeel Corporation, et al. (No. 1:19-cv-03618-PLF), and Union Carbide Corporation (No. 1:19-cv-03517-PLF).

Because the "genero[sity]" of *American Pipe* tolling "invite[s] abuse," courts must vigilantly ensure that defendants were "fairly placed on notice by the class suit," *i.e.*, that the individual lawsuit "'concern[s] the same evidence, memories, and witnesses as the subject matter of the original suit,' so that the defendant will not be prejudiced." *Crown*, *Cork & Seal Co. v. Parker*, 462 U.S. 345, 344-55 (1983) (Powell, J. concurring) (quoting *Am. Pipe*, 414 U.S. at 562 (Blackmun, J. concurring)). Here, the scale of new discovery into nearly 20-year-old evidence, and the obviously lost or dimmed memories that would be implicated by these new claims—including from KCS and two foreign corporations with no prior involvement in the case, and about a different kind of fuel surcharge never part of the class action—would be enormous. *See Supreme Auto Transp.*, *LLC v. Arcelor Mittal USA*, *Inc.*, 902 F.3d 735, 742 (7th Cir. 2018) (Wood, C.J.) (affirming in appeal brought by price-fixing conspiracy defendant Gerdau Steel, represented by the same counsel that represents Dow here, that *American Pipe* tolling did not apply where "[t]he substantial prejudice to defendants—who had no reason to think in 2008 that they should preserve evidence relating to the gargantuan number of consumer products now at issue—further counsels against applying any form of equitable tolling").

It is for this reason that *American Pipe* does not allow plaintiffs to "sleep[] on their rights" and then, more than a decade on, allege instead a conspiracy far longer, much broader, and rooted in a fundamentally different mechanism from that asserted by the putative class since 2007. *Crown*, *Cork*, 462 U.S. at 352; *cf. China Agritech*, *Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018) ("*American Pipe* . . . observed that tolling was permissible in the circumstances because plaintiffs who later intervened to pursue individual claims had not slept on their rights . . . ."). Tolling Dow's cause of action would deprive Defendants of the fair notice the Supreme Court requires and subject them to exactly the "unfair surprise" it prohibits. *See Crown*, *Cork*, 462 U.S. at 353, 355. And it

would require starting up a whole new case, with substantial fact and expert discovery, for which no justification has been or could be offered.

Untimeliness aside, the Court should dismiss or strike Dow's new allegations because they fall far short of what is necessary to plausibly plead a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Dow's naked assertion that KCS and the Canadian railroads "have taken actions in furtherance of the cartel's agreement, and are participants as co-conspirators in Defendants' anticompetitive actions to artificially raise rail freight prices and generate cartel profits" is not backed by allegations with any factual content. Dow Am. Compl. ¶ 20. Dow's pleading failures are not cured by generalized allegations against all the purported co-conspirators. Likewise, Dow's Amended Complaint is devoid of factual allegations suggesting the railroads conspired over mileage-based fuel surcharges, or over any fuel surcharges since the end of the MDL class period in 2008. Indeed, Dow's Amended Complaint does not allege even a single instance of parallel conduct after 2008, much less any facts that would suggest an unlawful agreement among the railroads. Defendants respectfully request that the Court dismiss or strike these allegations under Federal Rules of Civil Procedure 12(b)(6) or 12(f).

## II.    BACKGROUND AND SUMMARY OF THE NEW ALLEGATIONS

### A.    The putative class alleged that four railroads conspired for five years to raise rail freight transportation prices through across-the-board use of uniform rate-based fuel surcharges.

The first of the complaints in what would become the MDL Actions was filed on May 14, 2007. *See Dust Pro*, *Inc. v. CSX Transp.*, *Inc.*, No. 2:07-cv-2251-DMC (D.N.J.), ECF No. 1. From this first filing and through final ruling of non-certification, the putative class has pursued a cause of action that concerns allegedly "uniform" rate-based fuel surcharges. *Id.*, ¶¶ 2, 37, 44; Class Compl. ¶¶ 5, 13, 14, 56, 65, 71, 75, 78. These complaints were consolidated for pretrial proceedings in November 2007. *See* Transfer Order, MDL 1869, ECF No. 1. The putative class

plaintiffs then filed their Consolidated Amended Class Action Complaint in April 2008.  MDL

1869, ECF No. 92.  That complaint named as the alleged conspirators the nation's four largest

railroads: CSXT, UP, NS, and BNSF.  *Id.* ¶ 2.  While some of the pre-consolidation complaints

also named as defendants KCS and the Association of American Railroads ("AAR"), *see*, *e.g.*,

*Dakota Granite Co. v. Ass'n of Am. R.R.s*, No. 1:07-cv-1078-PLF (D.D.C.), ECF 1, both were

dropped from the consolidated complaint and terminated as defendants on April 15, 2008.  Neither

entity has been identified as a conspirator in the eleven years since.

The putative class filed what remains the operative complaint (the "Class Complaint") in

the MDL Actions in February 2010, without change to the conspiracy-related allegations.  MDL

1869, ECF No. 324. The Class Complaint alleged that the MDL Defendants' use of rate-based fuel

surcharges enabled them to achieve an "effective percentage rate increase" and limited the putative

class to claims based on payments to those MDL Defendants from July 2003—December 2007 in

its class definition.  Class Compl. ¶¶ 5, 13-14, 34.  In March 2010, the putative class moved for

certification of a class that covered (1) rate-based (or "rebased") fuel surcharges; (2) paid to the

four MDL Defendants; (3) from July 1, 2003, through 2008:

> All entities or persons that at any time from July 1, 2003, until December 31, 2008
> (the "Class Period") purchased rate-unregulated rail freight transportation services
> directly from one or more of the Defendants, as to which Defendants assessed a
> standalone rail freight fuel surcharge applied as a percentage of the base rate for the
> freight transport (or where some or all of the fuel surcharge was included in the
> base rate through a method referred to as "rebasing") ("Fuel Surcharge").

MDL 1869, ECF No. 339 at 1.  In June 2012, the Court certified the class as proposed.  Op. at 144,

MDL 1869, ECF No. 550.

The D.C. Circuit vacated the class certification decision in August 2013 and remanded to

this Court in light of the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. 27

(2013).  *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013).

This Court denied class certification on remand on October 10, 2017.  Order, MDL 1869, ECF No.

843.  The D.C. Circuit affirmed this denial on August 16, 2019.  *In re Rail Freight Fuel Surcharge*

*Antitrust Litig.*, 934 F.3d 619 (D.C. Cir. 2019).

      With certification denied, some previously absent plaintiffs have filed suit beginning in

September 2019 to press individually the above-described conspiracy claim as it was advanced by

the putative class.  *See*, *e.g.*, *Kellogg Co. v. BNSF Railway Co.*, 19-cv-02969 (D.D.C.), ECF No.

1 (filed Oct. 2, 2019).

**B.**      **Dow alleges that CN, CP, and KCS conspired with the MDL Defendants for sixteen years over rate-based and mileage-based fuel surcharges.**

      Dow filed its Complaint on November 21, 2019, ECF No. 1, and filed an Amended

Complaint on December 9, 2019, ECF No. 8. This Amended Complaint also alleges a single cause

of action—a conspiracy to fix the price of rail freight transportation in violation of Sherman Act

Section 1, 15 U.S.C. § 1, *id.* ¶ 1—but involves major new allegations never raised in the MDL

Actions:

      **1.**      **Dow accuses CN, CP, and KCS as conspirators.**  Dow alleges that other

"unnamed major Class I railroads," "including, but not limited to, KCS, CN, CP, or their

predecessors," conspired with Defendants CSXT, NS, BNSF and UP to "increase the price of rail

freight services."  Dow Am. Compl. ¶¶ 1, 3, 16-20.  *Id.*  Dow's allegation that is apparently

intended to support the involvement of CN, CP, and KCS in a conspiracy is that:

- CN, CP, and KCS have been members of the AAR since 2003 "when the conspiracy began" and implemented what the Dow Amended Complaint refers to as "Inflated Fuel Surcharges" "in accordance with the anticompetitive agreement described herein" (*id.* ¶ 20 n.2).

      **2.**      **Dow alleges that the railroads conspired over mileage-based fuel surcharges.**

Dow alleges that the railroads conspired not just over rate-based fuel surcharges, as in the alleged

conspiracy asserted in the MDL Actions, but that "upon information and belief" they allegedly conspired to fix mileage-based fuel surcharges as well.  Dow Am. Compl. ¶¶ 11, 55.  The allegations apparently intended to support the existence of an agreement to fix prices using mileage-based fuel surcharges are:

- At some point after the STB's decision concerning rate-based fuel surcharges in 2007 and before the present, CSXT, BNSF, and UP each implemented mileage-based fuel surcharge programs, first on rate-regulated traffic, then on rate-unregulated traffic (*id.* ¶ 84);

- NS "[e]ventually... adopted a mileage-based fuel surcharge" (*id.* ¶ 84);

- Defendants' mileage-based fuel surcharge programs allegedly "did not reflect the actual cost of fuel" and "were still applied on top of adjusted base rates that already included a fuel component" (*id.* ¶ 11).

**3.** **Dow triples the time the railroads were allegedly conspiring.**  The purported conspiracy allegedly morphed in 2007 and continues to this day, for a total of sixteen years.  Dow Am. Compl. ¶¶ 11, 12, 84. The allegations apparently intended to support the existence of a conspiracy over the intervening decade to the present are:

- that Defendants' changes to their fuel surcharge programs "following the STB's 2007 decision" "did not constitute withdrawal from the cartel" (*id.* ¶ 84);

- Defendants purportedly "still applied" fuel surcharges "on top of base rates that were adjusted base rates that already included a fuel component" and "continued to use indices that exclude fuel costs to escalate the base rate in contracts" (*id.* ¶ 11);

- after 2007, "Defendants (and their co-conspirators) have all remained members of the AAR" and they have continued to attend conferences and industry gatherings, which, "upon information and belief," allegedly constitutes "collusive activity" that "ha[s] had the continuing effect of restraining trade in the market for rail freight services." (*id.* ¶ 85).

## III.   ARGUMENT

### A.   Dow's Amended Complaint is time-barred and must be dismissed.

Dismissal of late-filed lawsuits under Rule 12(b)(6) is appropriate where, as here, the running of the statute of limitations is "apparent on the face on the complaint." *Messerschmidt v.*

*United States*, No. 03-cv-2421-EGS, 2005 WL 578174, at *2, 7 (D.D.C. Mar. 10, 2005) (dismissing complaint on limitations grounds under Rule 12(b)(6)); *see, e.g.*, *I & U, Inc. v. Wolters Kluwer Health, Inc.*, No. 18-cv-8469-MWF, 2019 WL 2750890, at *3 (C.D. Cal. May 6, 2019) (dismissing Sherman Act case as untimely at the pleading stage).   Because *American Pipe* does not toll Dow's four-year limitations period under the Clayton Act, its Amended Complaint—which alleges Dow incurred damages as a result of the purported conspiracy beginning in 2003 and does not otherwise allege any conspiratorial acts in the past four years—was time-barred long ago.[3]

> **1.   *American Pipe* does not toll Dow's limitations period because the MDL Actions did not provide Defendants with fair notice of Dow's factually distinct conspiracy theory.**

Defendants do not dispute that under *American Pipe*, the first-filed complaint in the MDL Actions tolled the Clayton Act's four-year statute of limitations, 15 U.S.C. § 15b, for absent class members who later file lawsuits that assert the same claims as the former putative class.   *See generally American Pipe*, 414 U.S. 538; *Crown, Cork*, 462 U.S. 345.   But in alleging its different conspiracy theory, Dow's suit seeks damages for three types of new claims for which it was not a class member: not included in the class definition were shippers who paid fuel surcharges to CN, CP, or KCS, nor shippers who paid *mileage-based* fuel surcharges (as opposed to "standalone rail freight fuel surcharge applied *as a percentage of the base rate*"); nor shippers who paid any fuel surcharges, of any type, to any railroad, after the Class Period's close on December 31, 2008.   *See*

---

[3]   Defendants previously agreed, "for claims previously tolled by pendency of the class action," to "exclude from future statutes of limitations calculations" the period from the Court's order denying class certification and the D.C. Circuit's ruling affirming that order.   Dkts. 851 at 2, 856 at 3 (emphasis added).   In the wake of the D.C. Circuit's decision, Defendants individually entered tolling agreements with Dow that likewise tolled the statute of limitations for otherwise timely claims.   Because Dow's claims were not tolled by the pendency of the class action and were thus long ago time-barred, these agreements are not implicated here.

*supra* section II.A (quoting MDL 1869, ECF 339 at 1) (emphasis added).  As a result, and indeed as Dow and its counsel are well aware—having just three years ago expressed these very same tolling concerns as a defendant against allegations of price-fixing in the steel industry—their limitations period was not tolled during the pendency of the class action because "their claims were not encompassed by the original suit."  *Supreme Auto Transp.*, 902 F.3d at 742 (affirming that *American Pipe* tolling did not apply to new plaintiffs' claims for a broader set of steel products than was contemplated by the class complaint).

To guard against *American Pipe's* potential for "inviting abuse," the efficiencies gained by encouraging absent class members "to rely on the named plaintiffs to press their claims" are grounded in the requirement that the class complaint provides defendants with "fair notice" of the individual plaintiff's later-filed suit so they can understand the "essential information necessary to determine both the subject matter and size of the prospective litigation."  *McCarthy v. Kleindienst*, 562 F.2d 1269, 1274 (D.C. Cir. 1977); *Crown*, *Cork*, 462 U.S. at 353-55.  That is, a later-filed individual plaintiff must bring the same claims that were pressed by the class.

The D.C. Circuit takes a "functional reading of *American Pipe*" to determine "whether tolling under these circumstances would serve the purposes underlying the class-action tolling doctrine."  *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527-29 (D.C. Cir. 2010) (holding at the motion to dismiss stage that *American Pipe* did not toll the plaintiff's claims); *see also Angel v. Fed. Home Loan Mortg. Corp.*, No. 1:18-CV-01142, 2019 WL 1060805, at *5 (D.D.C. Mar. 6, 2019) (*American Pipe* should not pause the limitations period where the individual claim "diverges markedly [from the class claim] in terms of defendants, theories of liability, and the relief sought").  To conduct this analysis, courts can compare the allegations in the new

complaint against those in the class complaint, and can also "go beyond the facts of the complaint." *McCarthy*, 562 F.2d at 1274-75.

Defendants had nothing close to fair notice of Dow's claims. Given the different purported conspiracy theories underlying the MDL Actions and this Amended Complaint, it is clear that the MDL Actions did not notify Defendants of the "essential information necessary to determine" either the "subject matter" or the "size" of the case as alleged in Dow's Amended Complaint. *See id.* at 1274. Indeed, the alleged conspiracy Defendants were notified of in the MDL Actions differs from Dow's Amended Complaint at the most basic levels: *who* was involved, *when* the alleged price fixing happened, *what* was allegedly price-fixed, and *how* the alleged price-fixing occurred:

**Who:** Despite no factual support, Dow alleges that CN, CP, and KCS conspired. Dow Am. Compl. ¶ 20. At no point in the past decade, even after years of fact discovery, has the putative MDL class asserted that CN, CP, or KCS was involved in an alleged conspiracy; KSC was dropped as an alleged defendant when the putative class filed its consolidated complaint in 2008, and the Canadian railroads were never named as defendants or conspirators. As a result, Defendants were not on notice that the litigation's size could expand to include overcharge claims from Dow—and many potential additional plaintiffs—that purchased rail freight transportation services from CN, CP, or KCS. Nor were Defendants on notice that these other railroads' conduct would be part of the litigation's subject matter. Adding them at this belated stage would cause discovery and evidentiary nightmares that *American Pipe* is designed to avoid: collection and production of documents and depositions of witnesses for evidence that will need to go back *nearly twenty years* from three large corporations (two of them foreign) and their many, potentially former, employees, none of which have had any reason to preserve such evidence. *See Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 477 (S.D.N.Y. 2016) (quoting *American Pipe*, 414

U.S. at 562) ("Here, in light of the different types and timing of the acts of market manipulation alleged, there is no basis to suppose that the two actions would turn on the 'same evidence, memories, and witnesses.'").  Defendants should not have to now try to vindicate the conduct of these new purported but unnamed co-conspirators whose "evidence, memories, and witnesses" have faded with time.  *Crown*, *Cork*, 462 U.S. at 355 (Powell, J. concurring).

For these fundamental reasons, courts have widely held that *American Pipe* tolling does not apply to new defendants not named in the class complaint.[4]  The same logic applies to an entity like KCS, who by being dropped by the putative class and terminated from the litigation at the outset of consolidation, was notified—if anything—only that it was *not* a defendant or conspirator.  *McCarthy*, 562 F.2d at 1274-75.  Apparently Dow recognizes it could not now get away with suing CN, CP, and KCS directly, and does not bother to try.  But it cannot sidestep this clear prohibition just by seeking damages instead from Defendants for these other railroads' alleged conduct; the same faded memories and stale evidence would be needed, and Defendants have had no more notice than CN, CP, or KCS.

---

[4]  *See*, *e.g.*, *Wyser-Pratte Mgint. Co. v. Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005) (affirming dismissal of new defendant on limitations grounds as "consistent" with the "principle" that "the class action must afford the defendant with adequate notice" for *American Pipe* tolling to apply); *Vodak v. City of Chicago*, No. 03-cv-2463, 2006 WL 1049736, at *4 (N.D. Ill. Apr. 19, 2006) (dismissing complaint against newly added defendants because, by not being named in the class complaint, they were not put on notice of the claim against them); *Mott v. R.G. Dickinson & Co.*, No. 92-cv-1450-PFK, 1993 WL 63445, at *5 (D. Kan. Feb. 24, 1993) ("If [*American Pipe*] tolling applies to claims that later name new defendants, however, these newly named defendants would suffer unfair surprise.  Thus, the tolling logically applies to class members bringing claims against the defendants named in the initial class complaint."); *cf. Arneil v. Ramsey*, 550 F.2d 774, 782, n.10 (2d Cir. 1977) ("[N]othing in *American Pipe* suggests that the statute be suspended from running in favor of a person not named as a defendant in the class suit, and we decline to so extend the rule.  A different conclusion would not comport with reason.").

**When:** Dow would add another *eleven years* to the five-and-a-half-year class period alleged in the MDL Actions, which ended in December 2008.   Dow Am. Compl. ¶¶ 1, 55. Defendants therefore had no notice of how Dow alleges that the railroads supposedly agreed to fix prices for rail freight transportation services beyond the class period (and still do not, as it is not alleged in Dow's Amended Complaint), or that, with this three-fold elongation of the alleged conspiracy period, the number of plaintiffs—and the scope of their potential damages—would balloon.  *Shak*, 156 F. Supp. 3d at 476 (refusing to apply *American Pipe* tolling because "the conduct alleged [in the pending complaint] came years after most of the conduct alleged in the class action").   Relatedly, allowing Dow to proceed with its post-2008 damages claims would require the Court to manage discovery of witnesses and documents from all seven railroads relating to rail freight transportation services on which any fuel surcharge applied for the last eleven years, a result manifestly not intended by *American Pipe.  See id.* at 475.

**What and how:** Dow alleges, with no factual support, that the railroads also conspired over purchases of rail freight transportation that included *mileage-based* fuel surcharges.  *See* Dow Am. Compl. ¶ 11.  The conspiracy alleged in the MDL Actions is expressly and fundamentally limited to *rate-based* fuel surcharges, which were purportedly used to accomplish an across-the-board percentage price increase for rail freight services.[5]

Defendants therefore had no notice that most of Dow's alleged damages period—some mileage-based fuel surcharge programs allegedly began as early as 2007, *see* Dow Am. Compl. ¶ 85—would concern as its subject fuel surcharges different from those alleged by the putative

---

[5]   *See*, *e.g.*, Class Compl. ¶¶ 5, 13-15, 38, 56, 73, 78 ("BNSF, UP, CSX[T] and NS agreed in 2003 to remove fuel from the AII and RCAF, and thereby permit the application of separate Rail Fuel Surcharges as a multiplier percentage of the base rate[, which] meant that the Fuel Surcharge could operate as a means to impose an effective across-the-board rate increase, and thereby raise revenue far beyond the actual costs of fuel").

class.  *See also In re Rail Freight Antitrust Litig.*, 287 F.R.D. 1, 55 (D.D.C. 2012) (explaining for

the MDL Actions that "as plaintiffs and their expert make clear, their antitrust claim in this case is

not a conspiracy to impose just *any* fuel surcharge") (Court's emphasis).  Likewise, the MDL

Actions provided no notice with regard to the size of the litigation that future plaintiffs (and

attendant damages) might include shippers that paid mileage-based surcharges even though they

were not part of the class.  *See* Dow Am. Compl. ¶ 11.  As a result, allowing Dow to move forward

with these additional claims would require the Court to oversee a massive discovery effort into the

witnesses and documents from all seven railroads (and from Dow and any other new plaintiff who

brings related claims) relating to mileage-based fuel surcharges for at least as far back as the close

of the class period in 2008.  *See Supreme Auto Transp.*, 902 F.3d at 742 ("The substantial prejudice

to defendants—who had no reason to think in 2008 that they should preserve evidence relating to

the gargantuan number of [new claims] now at issue—further counsels against applying any form

of equitable tolling."); *see also Shak*, 156 F. Supp. 3d at 467-77 (dismissing individual

Commodities Exchange Act claim as untimely in part because class complaint alleged price

manipulation on a different type of silver derivative).

Tolling Dow's Sherman Act claim would, as a result, frustrate the purpose of *American

Pipe* tolling and create exactly the "unfair surprise" that it prohibits.  *Crown*, *Cork*, 462 U.S. at

353.  Indeed, far from the "needless" lawsuits of unnamed plaintiffs pressing the same allegations

as a putative class, Dow's separate, timely lawsuit would have been necessary because the putative

class was never going to prosecute the bulk of these claims on Dow's behalf.  *See*, *e.g.*, *Angel*, No.

2019 WL 1060805, at *6 (noting that, due to the alleged differences between the plaintiff's claim

and the original class suit, the plaintiff "can hardly claim to have been taking the 'wait and see'

approach contemplated in *American Pipe* and *Crown*, *Cork & Seal*").  If Dow were concerned that

the putative class representatives had the story so wrong—that they failed to recognize that at least three other railroads conspired, that they and other railroads continued to conspire for years notwithstanding the commencement of the litigation before this Court, or that mileage-based fuel surcharges were the subject of collusion, it had three options: (1) opt out by filing its own (timely) lawsuit; (2) work with the class representatives to broaden the class; or (3) move to intervene. Dow pursued none of those options, and is left with a time-barred claim.  Because Dow should have filed its lawsuit long ago and did not, its Amended Complaint should be dismissed outright with prejudice.[6]

> ## 2. Absent tolling, the statute of limitations on Dow's claims expired many years ago.

Without the benefit of *American Pipe* tolling, Dow cannot now sue for damages under the Clayton Act because it alleges its cause of action accrued well outside the statutory four-year limitations period.  Dow Am. Compl. ¶ 1; 15 U.S.C. § 15b.  Dow alleges it began paying artificially inflated prices for rail freight services on July 1, 2003.  Dow Am. Compl. ¶ 1.  Unless an exception is plausibly pled, a Clayton Act damages claim accrues when the plaintiff is first injured, and so Dow needed to file its lawsuit in mid-2007—more *than twelve years before it filed this Complaint* in November 2019—to timely recover these alleged damages.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190-91 (1997) (using the Clayton Act statute of limitations to explain that the limitations period begins "at the point the act first causes injury").  In any event, Dow's claims had "unquestionably accrued" when the putative class filed its first complaint in 2007, meaning that even under the most liberal reading of the Amended Complaint, Dow filed over eight years too

---

[6]   At a minimum, Dow's damages claims based on the allegations either expressly dropped or never raised in MDL actions—that CN, CP, and KCS also conspired, that the railroads conspired after 2008 and to this day, and that they conspired over mileage-based fuel surcharges—should be dismissed or stricken.

late.  *Supreme Auto Transp.*, *LLC v. Arcelor Mittal USA*, *Inc.*, 238 F. Supp. 3d 1032, 1043 (N.D.

Ill. 2017) (dismissing price-fixing claims as untimely because plaintiffs' claims had accrued at the

very latest when the class plaintiffs filed their original complaint seven years prior).  As a result,

and because no exception is plausibly pled,[7]  Dow's complaint is untimely.  *See Zenith Radio*

*Corp. v. Hazeltine Research*, *Inc.*, 401 U.S. 321, 338 (1971) (internal citation omitted) (quoting 15

U.S.C. § 15b) ("[D]amages are recoverable under the federal antitrust acts only if the suit therefor

is commenced within four years after the cause of action accrued, plus any additional number of

years during which the statute of limitations was tolled"); *Varner v. Peterson Farms*, 371 F.3d

1011, 1020 (8th Cir. 2004) (affirming dismissal of Sherman Act case as time-barred where no

exception was sufficiently pled).

### 3.  Alleged "continuing effects" of a purported conspiracy do not turn Dow's late-filed Complaint into a timely one.

Presumably aware that its Complaint should have been filed many years ago, Dow alleges

that the "effects" of the purported conspiracy extended beyond mid-2007 and "were not undone."

Dow Am. Compl. ¶ 84.  Absent an exception or basis for tolling, however, alleging that the *effects*

of a time-barred conspiracy are felt in the limitations period cannot turn a late lawsuit into a timely

one.  Dow must plausibly allege an "injurious" or "overt" act during the four-year limitations

period, *i.e.* one occurring since early November 2015, but does not.  Asserting that Dow felt

---

[7]  Dow does not allege that the doctrine of fraudulent concealment tolled the limitations period. Nor could it plausibly, given the pendency before this Court of the MDL Actions for the last twelve years.  To invoke fraudulent concealment, which must be pled with particularity under Federal Rule of Civil Procedure 9(b), Dow would need to allege an "affirmative act" of concealment that "tricks" or "contrives"—an "underlying wrong" that is supposedly "self-concealing" is insufficient.  *Pena v. A. Anderson Scott Mortg. Grp.*, 692 F. Supp. 2d 102, 107-08 (D.D.C. 2010); see also *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994). Dow must also allege that it used due diligence to try and uncover the facts.  *Larson*, 21 F.3d at 1173.  It alleges neither.

"effects" of "the abatable but unabated inertial consequences" of purported conspiratorial activity that occurred outside the limitations period—or that Defendants continued to attend "conferences and industry gatherings" sometime after 2007, *see* Dow Am. Compl. ¶ 85—is not sufficient.  *See In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03-cv-30000, 2007 WL 3171675, at *5 (N.D. Ohio Oct. 29, 2007), *aff'd*, 583 F.3d 896 (6th Cir. 2009) (dismissing conspiracy complaint where alleged reduction of travel agent commissions within the limitations period was insufficient to restart the limitations period because it was merely a continuation of a pre-limitations-period policy) *see also Insulate SB*, *Inc. v. Advanced Finishing Sys.*, No. 13-cv-2664-ADM, 2014 WL 943224, at *6-7 (D. Minn. Mar. 11, 2014), *aff'd*, 797 F.3d 538 (8th Cir. 2015) (dismissing price fixing claim as untimely because allegations that defendants "know and communicate with each other at industry conferences and otherwise" were insufficient to allege an overt act during the limitations period).  Nor is Dow's bare assertion that Defendants' "coordination of prices" is "ongoing."  Dow Am. Compl. ¶ 84.  This conclusory allegation is not supported by any factual content and is not plausibly alleged, as explained below in Section III.B.2.[8]

---

[8] For that reason, the reasoning of decisions like *Molecular Diagnostics Laboratories v. Hoffman-La Roche*, *Inc.*, 402 F. Supp. 2d 276, 286 (D.D.C. 2005), which hold that each time a purchaser is "allegedly forced to pay a supra-competitive price as a result of [defendants'] anticompetitive conduct, a separate injury accrued," does not apply here.  In any event, such allegations would only be timely with regard to overcharges Dow allegedly paid in the four years preceding its Amended Complaint.  *Id.*; *Klehr*, 521 U.S. at, 189 (paying overcharges during the limitations period does not permit recovery for overcharges outside of it).

*(cont'd)*

**B.      Dow fails to plausibly plead the allegations that were never raised in the MDL Actions.**

If the Court does not dismiss Dow's Amended Complaint as time-barred, the Court should dismiss or strike[9] its new conspiracy allegations as insufficiently pled."[10] To properly plead its Section 1 claim, Dow must plausibly allege that any "challenged anticompetitive conduct stem[s] . . . from an agreement." *Twombly*, 550 U.S. at 553 (alteration in original). Absent an agreement, allegations of parallel behavior by competitors are insufficient because they may be "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id.* at 554. To avoid dismissal, the allegations must "be enough to raise a right to relief above the speculative level"; "a conclusory allegation of [an] agreement" is not enough. *Id.* at 545, 555-57.

**1.      Dow does not plausibly allege the existence of any conspiratorial agreement involving CN, or CP, or KCS.**

Dow asserts that CN, and CP, and KCS were conspirators by nakedly alleging that "other unnamed Class I railroads also adopted Defendants' fuel surcharge formulas and applied Inflated Fuel Surcharges . . . after July 2003 (including, but not limited to, KCS, CN, CP, or their predecessors)" and have "taken actions in furtherance of the cartel's agreement and thereby

---

[9]    Under Rule 12(f), a court may strike "redundant, immaterial, impertinent, or scandalous" allegations. Fed. R. Civ. P. 12(f). "A matter is immaterial or impertinent when it is not relevant to the resolution of the issue at hand." *Judicial Watch*, *Inc. v. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004). "Motions to strike frequently are advanced in actions involving the antitrust laws . . . " 5C Wright & Miller, Fed. Prac. & Proc. § 1382 (3d ed.).

[10]    Defendants did not conspire, and do not concede that any portion of Dow's Amended Complaint is properly pleaded. To this point, Defendants have fought those of the allegations in Dow's Amended Complaint that were asserted by the putative class representatives in the MDL Actions for more than twelve years. But rather than belabor these proceedings with challenges to those allegations' plausibility under Rule 12, Defendants look forward to demonstrating at summary judgment, based on the extensive discovery record developed in that time, that they lack merit.

conspired with Defendants to artificially raise rail freight prices and generate cartel profits." Dow
Am. Compl. ¶¶ 3, 20.  No factual content supports this "bare assertion of conspiracy." *Twombly*,
550 U.S. at 557.  Dow alleges that CN, CP, and KCS assessed rate-based fuel surcharges, Dow
Am. Compl. ¶¶ 3, 20, but assessing fuel surcharges is not itself suggestive of conspiracy.  *See id.*
¶¶ 37-38 (recognizing the MDL Defendants assessed fuel surcharges before the alleged conspiracy
began); *In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-MD-01895, 2009 WL 323219, at *13-
14, 18 (N.D. Ga. Jan. 28, 2009) (defendants are "entitled to generate profits on fuel surcharges by
charging more than their incremental increase in fuel costs, so long as [they] do not illegally
conspire to do to").  That is particularly true here, where "as alleged in the Complaint itself, the
factual context . . . involved rapidly rising . . . fuel prices—an obvious potential stimuli and
discernible reason aside from collusion that plausibly could have instigated independent decisions
by defendants to impose surcharges." *LaFlamme v. Société Air France*, 702 F. Supp. 2d 136, 152
(E.D.N.Y. 2010); *see* Dow Am. Compl. ¶¶ 38, 62.

Dow also alleges CN, CP, and KCS were members of the AAR, a railroad trade group,
when it created a new cost index, the AIILF. Dow Am. Compl. ¶ 20 n.2.  But participation in a
trade group does not plausibly indicate an antitrust conspiracy.  *See Nat'l ATM Council*, *Inc. v.
Visa Inc.*, 922 F. Supp. 2d 73, 93 (D.D.C. 2013); *In re Optical Disk Drive Antitrust Litig.*, No.
3:10-MD-2143, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011); *LaFlamme*, 702 F. Supp. 2d
at 148.

These pleading failures cannot be cured by allegations in the Amended Complaint that refer
to alleged conspirators generally.  A plaintiff must plead facts that "give the defendant fair notice
of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (omission
and quotation marks omitted).  For that reason, generalized "group pleading" like that employed

by Dow (*see* ¶¶ 38, 45 ("Defendants and their co-conspirators agreed to eliminate fuel as a component in the AII index"), 84 ("Defendants (and their co-conspirators) . . . have continued to attend conferences and industry gatherings" that "have had the continuing effect of restraining trade in the market for rail freight services")) does not suffice. To this point:

> [a] plaintiff in a [Section] 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group. At trial, a [Section] 1 plaintiff will be required to make a factual showing that each defendant conspired in violation of the antitrust laws. Thus, the complaint must forecast that factual showing, and if it fails to allege particular facts against a particular defendant, then the defendant must be dismissed. In other words, the complaint must specify how these defendants were involved in the alleged conspiracy, without relying on indeterminate assertions against all defendants.

*SD3*, *LLC v. Black & Decker* (*US.*) *Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (alterations, citations, and quotation marks omitted). Dow cannot rely on such generalized allegations in their Amended Complaint to meet its burden to plausibly suggest that CN, and CP, and KCS were each individually involved.

### 2. Dow has not adequately alleged a conspiracy to fix prices with mileage-based fuel surcharges or of any conspiracy since 2008.

Dow's allegations regarding the existence of an agreement over mileage-based surcharges, or of any agreement after 2008, are similarly lacking. With respect to mileage-based fuel surcharges, Dow alleges only that:

- Defendants "eventually switched" to mileage-based fuel surcharge programs, and "upon information and belief, the effects of the conspiracy on prices continued" (*id.* ¶¶ 55, 84);

- The "ultimate objective of Defendants' conspiracy, to raise total freight rates, continued to motivate Defendants' behavior" (*id.* ¶ 85); and

- mileage-based fuel surcharges "still did not reflect the cost of fuel paid by Defendants" had the "same objective" of raising "total freight rates" "same revenue-generating aim" as the rate-based fuel surcharges, were used as "profit centers," and "greatly outpaced any increase in fuel cost" (*id.* ¶ 11).

Dow does not allege that any of the railroads came to an *agreement* to use mileage-based surcharges, much less how, when, and through whom any such agreement was reached. *See In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1257 (W.D. Wash. 2009) (dismissing a complaint alleging fuel surcharge conspiracy in part because the plaintiffs did not adequately allege the details of the purported agreement); *LaFlamme*, 702 F. Supp. at 147 (E.D.N.Y. 2010) (dismissing complaint alleging fuel surcharge conspiracy in part because the plaintiffs "fail[ed] to allege any specific facts providing any basis to infer an actual unlawful agreement by defendants").   Indeed, Dow alleges only that each Defendant implemented a mileage-based fuel surcharge program at some point or points after the STB's 2007 decision.  Dow Am. Compl. ¶¶ 55, 84.   Unable to even allege parallel conduct around mileage-based fuel surcharges, Dow does not attempt to allege the "something-more" needed to sustain a claim that those fuel surcharges were the product of some agreement between the railroads.  *See Twombly*, 550 U.S. at 557.

Similarly, Dow's attempt to plead a purported conspiracy from 2008 to the present, *see* Dow Am. Compl. ¶¶ 84-85, is also far from adequately pled.  The Supreme Court has made clear that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.  Dow's Amended Complaint does not offer even that: not one instance of parallel conduct was alleged to have occurred between 2008 and today.

Nor do the Dow Amended Complaint's undated allegations support an inference "upon information and belief" of any conspiracy from 2008 to the present.  *See Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019) (allegations pled "upon information and belief . . . surviv[e] a motion to dismiss only where the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible")

(internal quotation omitted).  To start, they lack the specificity required by *Twombly* that is needed

to provide fair notice to Defendants.  *See Twombly*, 550 U.S. at 555, 558.  But even assuming the

allegations pertain to post-2008 conduct, they merely assert that the railroads: (1) were members

of trade associations and attended industry conferences (Dow Am. Compl. ¶ 85); (2) used indices

to "escalate" the base rate in contracts (*id.* ¶ 11); and (3) implemented mileage-based fuel

surcharge programs at unclear points in time that "did not reflect the actual cost of fuel" (*id.* ¶¶ 11,

55, 84).

These allegations are not enough.  Bare allegations of attendance at trade association

meetings and industry conferences says nothing about a continued conspiracy,[11]  nor does the

standalone allegation that Defendants used a cost index to "escalate" rates—particularly with

nothing to suggest that Defendants acted in parallel, *see In re Travel Agent Comm'n Antitrust

Litig.*, 583 F.3d 896, 910 (6th Cir. 2009) (discussing why price increases among competitors, even

if consciously parallel, may not be indicative of a conspiracy).  *See In re LTL Shipping Servs.

Antitrust Litig.*, No. 1:08-MD-01895, 2009 WL 323219, at *13-14, 18 (N.D. Ga. Jan. 28, 2009)

(defendants are "entitled to generate profits on fuel surcharges by charging more than their

incremental increase in fuel costs, so long as [they] do not illegally conspire to do to").  And as

noted above, implementing mileage-based fuel surcharge programs at different times does not

---

[11]  *See*, *e.g.*, *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir.
2015) ("[P]articipation in trade-organization meetings where information is exchanged and
strategies are advocated does not suggest an illegal agreement."); *Am. Dental Ass'n v. Cigna
Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) ("[I]t was well-settled before Twombly that
participation in trade organizations provides no indication of conspiracy."); *Ass'n of Retail
Travel Agents, Ltd. v. Air Transp. Ass'n of Am.*, 635 F. Supp. 534, 536 (D.D.C. 1986) (granting
judgment on the pleadings in part because "mere membership in a trade association does not
give rise to an inference of conspiracy.").

Case 1:19-cv-03516-PLF   Document 19   Filed 02/07/20   Page 27 of 29
Case 1:19-cv-03516-BAH   Document 34-1   Filed 05/25/20   Page 23 of 25

suggest that any conspiracy occurred.  Accordingly, the Court should strike or dismiss allegations of any purported conspiracy about mileage-based fuel surcharges or of any agreement after 2008.

## IV.    CONCLUSION

For the reasons above, Dow's Amended Complaint is time-barred on its face, and its new assertions purporting to adding new alleged conspirators, mileage-based fuel surcharges, and eleven more years of supposed collusion should further be dismissed as not plausibly alleged under Rule 12(b)(6) or stricken under Rule 12(f).

Respectfully submitted,

*/s/ Tara L. Reinhart*
Tara L. Reinhart (D.C. Bar. No. 462106)
John M. Nannes (D.C. Bar. No. 195966)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
tara.reinhart@skadden.com
john.nannes@skadden.com

*Attorneys for Defendant Norfolk Southern Railway Company*

/s/ Andrew H. Marks
Andrew H. Marks (D.C. Bar No. 932269)
LAW OFFICES OF ANDREW MARKS PLLC
1001 Pennsylvania Avenue, N.W., Suite 1100
Washington, DC 20004
Telephone: (202) 618-9355
amarks@markslawoffices.com

David M. Wells (pro hac forthcoming)
Anne Coxe Mesrobian (pro hac forthcoming)
GUNSTER, YOAKLEY & STEWART, P.A.
225 Water Street, Suite 1750
Jacksonville, FL 32202
Telephone: (904) 354-1980
Facsimile: (904) 354-2170
DWells@gunster.com

AMesrobian@gunster.com

*Attorneys for Defendant CSX Transportation, Inc.*

/s/ Veronica S. Lewis
Veronica S. Lewis
Andrew P. LeGrand
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3100
VLewis@gibsondunn.com
ALeGrand@gibsondunn.com

Andrew S. Tulumello (D.C. Bar No. 468351)
Joshua Lipton (D.C. Bar No. 461731)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8500
ATulumello@gibsondunn.com
JLipton@gibsondunn.com

Randy M. Mastro
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
RMastro@gibsondunn.com

*Attorneys for Defendant BNSF Railway Company*

/s/ John M. Majoras
John M. Majoras (D.C. Bar No. 474267)
Kristen A. Lejnieks (D.C. Bar No. 502136)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113
Telephone: (202) 879-3939
jrnmajoras@jonesday.com
kalejnieks@jonesday.com

Tyrone R. Childress
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071-2300

Telephone: (213) 489-3939
tchildress@jonesday.com

*Attorneys for Defendant Union Pacific Railroad*
*Company*

February 7, 2020

**Re-filed May 25, 2020,**
**pursuant to No. 1:20-mc-00008-BAH, ECF 102**